IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DERRICK SMITH**                                                          **PLAINTIFF**

v.                                              CIVIL ACTION NO.: 3:23-cv-241-HTW-LGI

**MANAGEMENT & TRAINING**                                  **DEFENDANT**
**CORPORATION**

### AFFIDAVIT OF DERRICK SMITH

1. My name is Derrick Smith. I am over the age of eighteen years old. I state the following based upon my own personal knowledge and am competent to testify as to these matters.

2. I am a 44-year-old black male resident of Lauderdale County and Bailey, Mississippi.

3. I received my GED from Meridian Community College in 1999.

4. I obtained an Associate Degree in Criminal Justice from the University of Phoenix.

5. I later obtained a Bachelor's Degree in Criminal Justice from the University of Phoenix in 2022.

6. I was hired on February 17, 2020 as a Captain at Management & Training Corporation (MTC).

7. Prior to being hired at MTC in 2020, I previously worked at EMCF as a Correctional Officer from 2001-2004, as an Armory/Key Control/ Tool Control Sergeant from 2004-2007, as a Lieutenant from 2007- 2008, as a Captain from 2008-2011, as an Emergency Response Team Commander in 2012, and as the Chief of

Exhibit "A"

Security from 2012-2014.

8. I left my position as the Chief of Security at EMCF in 2014 because I was recognized for my exemplary work performance and received a job offer with better pay and benefits working as a Security Guard Supervisor for the US Embassy in Kabul, Afghanistan.

9. I am currently employed at MTC at the East Mississippi Correctional Facility. (EMCF).

10. During all of my time that I have been employed at EMCF, I have exhibited exemplary work performance. I have never been disciplined, nor written up for anything during the scope of my employment.

11. I have received a Perfect Attendance Award and a Supervisor of the Year Award while employed at EMCF.

12. The Supervisory positions that I have held at EMCF include Chief of Security, Lieutenant, and Captain.

13. Beginning in March 2021, I applied for the position of Deputy Warden at EMCF.

14. Despite meeting the posted job qualifications for the Deputy Warden position, I was not selected to be interviewed for the position. At the time, Mr. Portillo was the Hiring Manager at EMCF, and Ms. Sara Revell (white female), the Regional Vice President, selected the final candidate from the interview pool.

15. Ultimately, the candidate Ms. Revell selected for the position was Mr. Jacob Vigilante, who is a Hispanic white male.

16. The highest-level position that I held prior to applying for the Deputy

Warden position was Chief of Security, and I served in the position from July 2012 – September 2014.

17. Nonetheless, I was promoted to Captain in February 2020, and Mr. Vigilante's highest rank is Lieutenant. As a result, I contend that it is reasonable to conclude that I am more qualified than Mr. Vigilante for the position because I had experience working in higher ranks than Mr. Vigilante.

18. Later that same month (March 2021), I applied for the position of Special Housing Manager.

19. On March 26, 2021, Warden Hector Portillo (Hispanic male) and Keith O'Banion (black male) interviewed me for the Special Housing Manager position. During that interview, Mr. Portillo told me that if I wanted to promote up, I would have to move away from EMCF. After the interview concluded, Mr. Portillo then told me that "it ain't who you know, but who knows you."

20. I have obtained an ACA Certification as a Certified Corrections Manager. Therefore, I am extremely familiar with the ACA 5th Edition standards. However, I was never asked about my Certification in my interview and whether I was familiar with the 5th Edition ACA standards. Because my resume denoted that I was Certified in the ACA 5th Edition standards, I did not need to go into extreme detail about the ACA standards when asked about them because I did not want to beat a dead horse.

21. Ultimately, the candidate selected for the position was Shericka Nelson (black female). Before being appointed to the position, Ms. Nelson had served as a Case Manager for a few months, and as the acting Special Housing Manager for no more than two months. By contrast, I had 15 years of experience in corrections and

over 10 years as a correctional supervisor when I applied for the Special Housing Manager position.

22. Ms. Nelson's experience did not even meet MTC's listed minimum requirements listed in the Special Housing Manager job description because she did not have any experience working in a supervisory role until working as the acting Special Housing Manager.

23. On June 11, 2021, I applied for the Chief of Security position and was interviewed by Warden Portillo, Mr. Vigilante, and Deputy Warden Mr. Ray Rice (white male).

24. On July 1, 2021, Mr. Portillo notified me that the position was awarded to Mr. Justin Rowell (white male). I contend that Mr. Rowell has lesser skills, qualifications and experience than I do, but yet MTC chose Mr. Rowell over me allegedly because he possessed the skills needed for the position.

25. Before being interviewed, Mr. Rowell was appointed as an Emergency Response Team Commander. I previously had been appointed as an Emergency Response Team Commander in 2012.

26. While working as an Emergency Response Team Commander, the job requires the appointed person to rally their team of 8 people to perform certain emergency response tasks. Additionally, they serve as the EMCF point of contact for other MTC Correctional Facilities to request employees from EMCF when they are short-staffed.

27. When MTC's facility in Marshall County was extremely understaffed, MTC Headquarters incentivized EMCF employees to volunteer and work at the facility

Case 3:23-cv-00241-HTW-LGI   Document 34-1   Filed 03/29/24   Page 5 of 8

in Marshall County by offering them their hourly pay, an extra $50 per day worked, and overtime pay. Because such incentive was extremely lucrative, many employees at EMCF, including myself, happily volunteered to work at the Marshall County facility. Because Mr. Rowell was the point of contact for EMCF employees to communicate that they were interested in volunteering and receiving the incentive offered by MTC Headquarters, it appeared that staff was rallying around Rowell when they were actually motivated by the incentive offered by MTC Headquarters to work in Marshall County.

28. During or around February 2021, before being selected for the Chief of Security position at EMCF, Mr. Rowell had accepted a demotion to the position of Training Lieutenant due to stress and admitting that he could not fulfill his duties as Captain.

29. By comparison, Mr. Rowell's resume indicates he has nine years in a correctional setting, four of which were in a county jail and five of which were at a maximum-security prison. I, however, have 15 years of experience in a prison setting, all of which were in a maximum-security prison. Whereas Mr. Rowell's highest level was a Captain—until he accepted a demotion prior to applying for the Chief of Security position due to stress and admitted his inability to perform his duties as a Captain.

30. On the other hand, my highest level was Chief of Security.

31. Of the candidates that were interviewed for the Chief of Security position, there were four black males, including myself, and one white candidate, Mr. Rowell. Nonetheless, Mr. Rowell was the candidate selected.

5

32. During my interview for the Chief of Security position, I was asked some questions by Mr. Portillo that were hypothetical and not similar to anything I had been asked in previous interviews for positions at EMCF. Mr. Portillo asked me "what would you do if I tell you to tell a dog handler to shoot her dog," "what would you do if I told an officer to shoot another officer," and "what if I told you that our Captain was performing well at his job, and I told you to just fire him?"

33. After my interview, I asked the other interview candidates if they were asked any questions similar to those Portillo had asked me. Mr. Scott and Mr. McClinton told me they were not asked such questions. However, Mr. Rowell told me that Mr. Portillo asked him "if I give you the position, can you control your temper?"

34. On July 23, 2021, I filed an EEOC Charge of Discrimination against MTC due to race and sex discrimination.

35. On or around March 2022, Mr. Portillo had told Mr. O'Banion to put me on administrative leave. I was not told why I was put on administrative leave, other than that it was ordered by Mr. Portillo.

36. During the week I was out on administrative leave, Mr. Portillo was demoted to the Warden position and Ms. Sara Revell was relocated to a facility in another region.

37. Shortly thereafter, I received a call from the new Regional Vice President, Mr. Michael Bell stating that they wanted me back at MTC working as a Captain.

38. In March 2024, I was contacted by Ms. Jennifer Brown at MTC and asked if I would apply for the Deputy Warden position. Ms. Brown told me that she knew that I was hardworking and because of that I would be a good fit for the vacant position. I

6

subsequently applied, was interviewed, and then hired as the Deputy Warden in March 2024.

I declare under penalty of perjury that the above and foregoing is true and correct as therein stated.

Further Affiant saith not.

Executed, this the 28th day of March, 2024.

*Derrick Smith*
_____
DERRICK SMITH