IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DERRICK SMITH**                                                            **PLAINTIFF**

**VS.**                                  **CIVIL ACTION NO. 3:23CV241-HTW-LGI**

**MANAGEMENT & TRAINING
CORPORATION**                                                          **DEFENDANT**

### REPLY TO PLAITNIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF MANAGEMENT & TRAINING CORPORATION

**A.**      **INTRODUCTION**

The reality is that Derrick Smith ("Smith") was no more qualified for the three positions at issue in this case than the individuals selected for those spots.

Smith's primary argument – that he was more qualified than the other candidates on paper – ignores the reality that employers do not choose job applicants and do not award promotions based solely on the words on a paper resume. Courts have repeatedly agreed that there are many factors at play in these decisions for employers and have repeatedly noted that it is not within their province to second-guess employers' decisions in cases where the choice is a close call. *See, e.g., Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). That is why Courts place such a high burden on plaintiffs in failure to promote cases, requiring them to show not just that they were qualified for promotions or that they were slightly better candidates for open positions than individuals who received the promotions, but to actually establish that their credentials, education, and experience are so much stronger than that of their competitors that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Davis v. Louisville Mun. Sch. Dist.*, 2010 WL 147802, Civil Action No. 1:08cv249-SA-JAD, *5 (N.D.Miss. Jan. 11, 2010).

Smith cannot meet that burden here. His sex and race had nothing to do with not receiving these promotions, and his claims must be dismissed with prejudice.

B.  **Sex Discrimination**

Smith does not challenge whether MTC has proffered neutral reasons for promoting Shericka Nelson ("Nelson") over him for the position of special housing manager [Doc. 35]. Instead, he argues that MTC's explanation is a pretext for sex discrimination. Smith offers two bases for this position: (1) Nelson did not meet the minimum requirements for the job and (2) his qualifications were better than hers.

First, Courts have consistently held, contrary to the blanket assertion Smith has made about the necessity of a candidate meeting "minimum job requirements," that employers are not prohibited from promoting individuals who do not check each "minimum job requirement" off the box. *Davis*, 2010 WL 147802 at *5. Employers have "the right to depart from published job requirements and to value certain attributes over others." *Id.* The Fifth Circuit has consistently held that "better education, work experience, and longer tenure with the company do not establish that an applicant is clearly better qualified, meaning that an employer has a right to depart from published job requirements and to value certain attributes over others." *Thomas v. Trico Prods. Corp.*, 256 Fed. Appx. 658, 662 (5th Cir. 2007); *see also Warren v. City of Tupelo*, 332 F.App'x 176, 182 (5th Cir. 2009) (finding no pretext even though the employer disregarded the minimum experience level noted on its job posting). Courts, in fact, give "[s]ubstantial weight" to "an employer's decision on necessary credentials." *Fonteneaux v. Shell Oil Co.*, 289 F.App'x 695, 697 (5th Cir. 2008).

Nelson worked as a case manager for MTC for seven months and as the interim special housing manager for a year before she was promoted to the full time role as special housing

{D2247604.1}

manager (Exhibit "A"). Smith is simply incorrect with his unsupported declaration that Nelson only held the special housing title for two months before her promotion [Doc. 35]. While Nelson did not technically meet the job description requirements of four years of related experience and two years of supervisory experience in a correctional setting [Doc. 34-3, p. 3], MTC promoted Nelson because she was doing the job for a year before her promotion, and she had shown the capacity to fill that role. Nelson's excellent performance helped MTC pass an ACA audit leading up to her promotion and excelled in her interview, showing an intimate knowledge of the rules that applied to MTC's special housing department. It is certainly not as if MTC hired someone for the full time role off the street who had no experience – Nelson had worked in this spot for a year and had shown the capability of performing the work, in the real world under real world circumstances, for a year.

MTC was not, as Smith argues, prevented from promoting Nelson over him simply because she did not, on paper, meet some of the minimum requirements for the position. Under Smith's theory, employers could never hire or promote someone who did not meet written minimum job requirements. Courts have never handcuffed employers in that way and never should. Courts have enough common sense to realize that there is often a vast difference in the candidates who meet the paper requirements for a job and candidates who do not but have nevertheless shown the ability to perform a job. That is precisely the case here. Smith's argument has no merit.

Second, Smith makes the same argument that Courts have repeatedly rejected - "attempt[s] to equate years served with superior qualifications." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010). Smith essentially argues that because he had worked in corrections for 15 years and had an ACA certification, he should have automatically been promoted over Nelson who had, as Smith incorrectly argues, only eight months of corrections experience. Despite serving in the

{D2247604.1}

industry longer, Smith's qualifications do not "jump off the page" and demand a different result than the one chosen by MTC.

As for the respective qualifications of Smith and Nelson, Smith had never served as a special housing manager, as Nelson had done for a year. While Smith had some sort of ACA certification from some point in the past, he could not answer questions about ACA standards and rules with any degree of specificity in his interview in March 2021, while Nelson could. Smith argues that he "is extremely familiar" with the standards, but Hector Portillo ("Portillo") disagreed. Smith's argument is little more than a self-serving opinion. Smith has offered no evidence as to how he obtained the certification, the type of information he was required to know to obtain the certification, when he obtained the certification, whether the ACA guidelines remained the same between obtaining the certification and March 2021, or why he had never held a position in which those guidelines were relevant or needed.

Smith wants this Court to take two sheets of paper and compare them line by line to decide who the better candidate was for the special housing manager position. Smith wants this Court to do so because he has no other valid argument – Smith never held the position in question, had never shown that he could perform the job, did not display the detailed knowledge necessary for the position in his interview, and offered MTC nothing more than a piece of paper to support his candidacy. Nelson, on the other hand, not only talked the talk but walked the walk, displaying her ability to answer all of MTC's interview questions about the ACA guidelines and proving in the real world that she could perform the job.

Smith's arguments have no merit. His sex had nothing to do with his job, and his sex discrimination claim should be dismissed with prejudice.

C.  **Race Discrimination**

   A.  *<u>Chief of Security position</u>*

Smith raises two points in support of his contention that the reasons proffered by MTC for its promotion of Justin Rowell ("Rowell") over him for the chief of security position are pretextual: (1) MTC's reasons are "inconsistent" and (2) MTC's reasons are not sufficiently articulated. He also argues that even if MTC has offered a neutral reason for its decision to promote Rowell over him, he was a better candidate for the job.

First, while inconsistencies between the explanation given to the EEOC for an employment decision and those given in Court may serve as a basis for finding pretext, information supplied to the Court that is additional or in the nature of a clarification to that supplied to the EEOC does not support a finding of pretext. *Bennett v. Consolidated Gravity Drainage Dist. No. 1*, 648 F'Appx. 425, 431 (5th Cir. 2016). The Court in *Bennett* rejected the plaintiff's pretext argument, finding that the "mere fact that [the employer's] attorneys provided the EEOC with only one of [the employer's] three justifications" for its employment decision "does not constitute a substantial showing of pretext" since the additional reasons were not inconsistent with the reason given to the EEOC. *Id.*

Smith argues that MTC's explanation to the EEOC for its decision not to promote him to this position is inconsistent with that given in MTC's Motion for Summary Judgment. It is not. MTC's position statement notes that Rowell served in a variety of positions at MTC and had "well-rounded skills suitable" for this role [Doc. 34-6, p. 4]. MTC's summary judgment brief did nothing more than add detail to that generic explanation to the EEOC [Doc. 32, pp. 6-12, 14-16]. In fact, MTC's brief outlines Rowell's "well-rounded skills" that were developed from serving in various capacities at MTC [Doc. 32, p. 6], and then adds additional details about how Rowell performed

in those roles [Doc. 32, pp. 6-12, 14-16]. Smith has offered no evidence or real explanation as to how the two "reasons" are inconsistent. While the same verbiage was not used as between MTC's position statement and brief, it is clear that the brief does nothing more than add onto what was noted in MTC's position statement. Smith's argument has no merit.

Second, while one could debate how detailed MTC's position statement was, MTC's summary judgment brief outlined very clearly why Rowell was promoted over Smith. Smith, of course, does not like the reasoning, which is the real problem here. Smith does not like the fact that he was passed over for the promotion by MTC in favor of someone who, again on paper only, did not have the same number of years of experience in the corrections industry as Smith but who had otherwise shown a keen ability to perform the job in the real world. Smith's argument is, as with Nelson, that MTC cannot show him, on paper, why Rowell received the promotion. MTC is not limited to promoting only individuals with a certain number of years in corrections or who have certain paper qualifications. MTC had a diverse interview panel whose members unanimously believed that Rowell deserved the chief of security position because he took initiative and showed that he could motivate staff at a time when that was an absolute necessity at EMCF.

Smith suggests that (1) Rowell was not deserving of the promotion because he had "self demoted," something Smith has no personal knowledge of, and (2) Rowell only "rallied the troops" with the help of the promise of more pay from MTC. Regarding the self-demotion, Smith has offered no admissible evidence to support his contention. Rowell was, as Smith admits, qualified for the position, and, as the interview panel found, expressed a strong interest in the position, applied for it, and accepted the job when offered. Smith's efforts of going line by line through the interview notes is also unhelpful here as it does nothing other than show that he and Rowell were neck-in-neck in the interview process. What Smith does not understand is that having possibly one

{D2247604.1}

section of the interview fall in his favor over Rowell does not make him a better candidate in the real world where decisions are made not solely upon paper qualifications, or upon years of service, or upon answers in an interview, but are oftentimes based upon actual job performance, attitude, and drive. As for the promise of more pay, Smith has, yet again, misstated the issue. The issue was not simply that Rowell was able to convince staff to travel from EMCF in Meridian to the Marshall County Correctional Facility in Holly Springs, a drive of three hours one way,[1] to help fill needs there with the promise of some additional pay by MTC. Rowell was, according to Jacob Vigliante ("Vigliante"), able to motivate staff at EMCF in multiple areas, something that had not been happening before Rowell jumped into the mix. Rowell was also, according to Vigliante, "getting things done" at EMCF. When there was a need, Rowell filled it. When work needed to be done, Rowell did it. The staff respected Rowell and followed him.

Even if Smith is correct in his assertion that "a reasonable mind could disagree that Rowell had a better work performance" than him, the test is not which candidate was slightly better qualified or marginally better qualified – the test is whether Smith has shown that he was clearly better qualified to the point that a reasonable person would instantly see that he should have received the promotion. Smith has failed to do so.

Finally, even if Smith could show that MTC's explanation is questionable or not worthy of full credence, it does not necessarily follow that MTC's motion should be denied. *Bennett*, 648 F.App'x at 432. When, as is the case here, the plaintiff's evidence creates "only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," summary judgment is still

---

[1] It is fairly absurd to believe that correctional officers would travel six hours each day to work for a mere $50 in extra pay per day and the possibility of overtime pay [Doc. 35, p. 23].

{D2247604.1}

appropriate. *Id.* Assuming Smith could call into question MTC's reasons for its decision, the evidence is, at most, "weak," and summary judgment should still be granted.

B.     *Deputy Warden position*

Smith makes four arguments in support of his claim that he was denied the deputy warden position because he is black: (1) he is more qualified than Vigliante on paper, (2) MTC has not sufficiently articulated the reasons Vigliante was promoted to the deputy warden position, (3) MTC did not follow its normal hiring process in selecting Vigliante, and (4) Portillo, the Warden at EMCF at the time, did not like him. None of these arguments have merit.

First, Smith's claim that he is more qualified than Vigliante is based on the false notion that Vigliante did not have virtually the same job experience as Smith. Smith continues with the argument that he has made throughout this litigation – Vigliante's resume shows that his highest rank was lieutenant, while Smith was a captain and chief of security for a period of time. Smith's unsupported beliefs notwithstanding, the evidence is uncontradicted here that Vigliante held every single position that Smith held (for more years) [Doc. 33, pp. 2-4]. While the terminology for the positions Vigliante held differ from those Smith held, the positions and duties were the same.

The fact also remains that better qualifications on paper, alone, do not warrant a finding of pretext. A side by side comparison of the paper qualifications of Smith and Vigliante ignores Vigiliante's work performance that largely resulted in his promotion. Moreover, a side by side comparison of their qualifications, at best for Smith, shows that the two were very similarly qualified but certainly does not show that Smith was a clearly better candidate for the job than Vigliante to the point that a reasonable person would insist that Smith be promoted over Vigliante.

Second, the reasons given for Vigliante's promotion are outlined thoroughly in MTC's brief. Vigliante held essentially every position in the corrections industry before his promotion and

performed extremely well in those roles. Smith raises this point but, of course, offers no argument whatsoever as to how the information set forth in MTC's brief is inadequate. This argument has no merit.

Third, Smith again relies upon his personal belief, speculation, and incorrect information in arguing that MTC did not follow its normal hiring process when it promoted Vigliante. As a starting point, Smith has offered no evidence that MTC did not follow its normal hiring process. Smith claims that Portillo selected Vigliante, but Vigliante testified that he was not on the committee that hired Vigliante [Doc. 31-3, p. 11]. Sara Revell, a Vice President at MTC, made the decision to hire Vigliante [Doc. 31-3, p. 11]. Portillo's involvement was simply to provide a glowing review of his observations of Vigliante's work at a different MTC-run prison [Doc. 31-3, pp. 11-12].

Smith's primary complaint about the hiring process for the deputy warden position seems to be that MTC did not consider his work performance. Smith has failed to show that MTC did not consider his work history and has likewise failed to identify an MTC rule or policy, or any other rule or case, that required MTC to do so. Smith's argument has no basis – it is little more than his continued complaint about being passed over by someone he believes (incorrectly in this instance) he had superior qualifications to on paper.

Finally, Smith's argument that Portillo "didn't like him" is nothing more than Smith's unsupported belief. In support of this claim, Smith notes that he was placed on administrative leave by Portillo in March 2022, a full year after Smith was not promoted to the deputy warden position. Temporal proximity between protected activity and an employment action is often used by plaintiffs to prove pretext (*see, e.g., Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243-44 (5th Cir. 2019)), but what Smith seems to suggest is that Portillo's decision to place him on

administrative leave in March 2022 is somehow emblematic of Portillo's animosity towards him. MTC does not know how such a decision by Portillo, the basis and circumstances of which are not outlined at all in Smith's Response, could possibly support the view that Portillo did not like Smith and, because of that dislike, chose not to promote Smith. The argument is the type of baseless, rank speculation that Courts do not permit as evidence to overcome summary judgment motions.

In short, Smith has offered no evidence to establish that he was clearly better qualified than Vigliante for the deputy warden position. Reasonable people might "agree to disagree" as to which candidate had better paper qualifications, but Smith falls well short of his high burden of producing evidence that "jumps off the page" and establishes that he should have been awarded this promotion. Smith's race discrimination claim has no merit and should be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, MTC respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the plaintiff's claims against it with prejudice.

Respectfully submitted,

MANAGEMENT & TRAINING CORPORATION

BY:   /s/ Timothy M. Peeples
      OF COUNSEL

TIMOTHY M. PEEPLES - BAR NO. 100103
tpeeples@danielcoker.com
MORGAN S. HART – BAR NO. 106484
mhart@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
265 NORTH LAMAR BLVD., SUITE R
P.O. BOX 1396
OXFORD, MISSISSIPPI 38655
(662) 232-8979 TELEPHONE
(662) 232-8940 FACSIMILE

{D2247604.1}

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, I filed the foregoing with the ECF system which sent notification to the following counsel of record:

>Louis H. Watson, Jr., Esq.
>Nick Norris, Esq.
>WATSON & NORRIS, PLLC
>4209 Lakeland Drive #365
>Flowood, MS 39232-9212
>Counsel for Plaintiff

>/s/ Timothy M. Peeples
>TIMOTHY M. PEEPLES

{D2247604.1}